Pursuant to Ind.Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before
any court except for the purpose of
establishing the defense of res judicata,
collateral estoppel, or the law of the case.

ATTORNEY FOR APPELLANT:

**MICHAEL B. TROEMEL**
Lafayette, Indiana

ATTORNEYS FOR APPELLEES:

**ROBERT J. HENKE**
DCS Central Administration
Indianapolis, Indiana

**CRAIG JONES**
DCS, Tippecanoe County Office
Lafayette, Indiana

**FILED**

Aug 22 2012, 9:40 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF: C.H. & G.H. (Minor Children), | ) ) ) ) | |
| and | ) ) | |
| G.H. (Father) and J.H. (Mother), | ) ) | |
| Appellants-Respondents, | ) ) | |
| vs. | ) ) | No.  79A02-1112-JT-1203 |
| THE INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) ) ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE TIPPECANOE SUPERIOR COURT
The Honorable Loretta Rush, Judge
Cause Nos. 79D03-1105-JT-51
79D03-1105-JT-52
79D03-1105-JT-53
79D03-1105-JT-54

**August 22, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

Case Summary and Issue

The trial court terminated the parental rights of J.H. ("Mother") and G.H. ("Father") to their two children, C.H. and G.H. (collectively, "the Children"). Mother and Father appeal, raising three issues for our review which we consolidate and restate as one: whether the trial court erred in terminating Mother's and Father's parental rights. Concluding the trial court did not err, we affirm.

Facts and Procedural History

On July 4, 2010, the Children were placed in foster care based upon allegations of domestic violence, Mother's mental health issues, and an unsafe home environment. A detention hearing was subsequently held, and thereafter several services were offered to Mother and Father, involving domestic violence, parenting, substance abuse, mental health treatment, and English as a second language courses. In August 2010, the Children were found to be children in need of services ("CHINS") and a dispositional order was entered. After Mother requested the Children be placed in her care, a modification hearing was held in

October 2010. The trial court denied Mother's request for modification due to both parents having tested positive for marijuana and cocaine. In November 2010 and January 2011, the trial court ordered Mother and Father to utilize additional services due to continued drug use. After a permanency planning hearing in May 2011, the Department of Child Services ("DCS") filed its verified petitions to terminate Mother's and Father's parental rights. After a hearing, the trial court entered an order terminating the parent-child relationships of both Mother and Father to the Children. The trial court's findings include:

1. [C.H.] was born on February 22, 2009, and [G.H.] was born on March 15, 2010 . . . .
2. On July 4, 2010, [the Children] were placed in foster care, where they remain, based on allegations of domestic violence, untreated mental health issues of Mother's and an unsafe environment. Mother and Father argued often and were not able to maintain the home at or above minimum standards. Mother left the children in the care of a babysitter who had her own rights terminated as to her children and whose last name Mother did not know. The babysitter brought GH to the hospital for a bump on his head. The hospital staff noted GH was very dirty, had a foul smell, and was hungry. . . . Mother suffered from post partum depression after the birth of GH, was admitted to Home Hospital Psychiatric Unit, and failed to follow through with the recommended mental health treatment upon her release.
* * *
5. . . . Court denied Mother's request for placement due to both parents testing positive for marijuana and cocaine. CH submitted to a hair drug screen on September 23, 2010, which was also positive for cocaine and benzoylecgonine. Parents admitted they used marijuana and cocaine while their children were residing in foster care. . . .
6. Court held review hearings on November 12, 2010, and January 31, 2011. Due to the continued use of drugs and alcohol by both Mother and Father, along with additional concerns that arose during parental assessments, Court ordered additional services to include: neurological evaluation for GH at Riley Children's Hospital, anger management, family therapy, GED classes, Living in Balance (Spanish version), IOP (Intensive Outpatient Program), and a medication evaluation. . . .
* * *

9. Mother has numerous mental health challenges. Mother participated in a psychological evaluation and was diagnosed with Major Depressive Disorder, Dysthymic Disorder, Attention Deficit/Hyperactivity Disorder, Adjustment Disorder with Anxiety, Learning Disorder, Partner Relational Problem, and Mixed Personality Disorder with Avoidant, Dependent and Passive-AggressiveTraits [sic]. Dr. Vanderwater-Piercy found, "[Mother] presents with both clinical and character pathology that appears to be compromising her ability to function effectively as a parent. She reported a longstanding history of depression with periodic exacerbations of depression symptoms. There is a significant vegetative component to her depression marked by a lack of motivation. . . . There are also indications of an attention-deficit disorder that further compromises her ability to function efficiently in completing everyday tasks and responsibilities . . . .

10. Mother's psychological evaluation also found that Mother has an increased risk for anger management problems and problems in parenting her children. Mother reported having a hard time getting out of bed, being disorganized, poor problem solving skills, being impulsive, displaying emotional distress of crisis proportions, crying everyday, and often being angry.

11. Mother struggled to be consistent with and comply with counseling services in spite of her extensive mental health issues. Mother would attend her individual counseling for a couple of sessions, make some progress, and then no-show or cancel numerous times leading to an overall lack of progress. Mother was eventually terminated from individual and couple's counseling.

12. Mother is currently prescribed psychotropic medication for depression, anxiety, and bi-polar. . . . Mother routinely failed to take her medication as prescribed during the case. . . .

13. . . . Mother dropped out of high school in the eleventh (11th) grade. Mother has been on adult probation for Resisting Arrest, Disorderly Conduct, and Minor in Possession. . . .

14. Mother has an ongoing struggle with substance abuse. Mother submitted to numerous drug screens but also failed to appear for scheduled drug screens. . . . Mother was unable to remain clean long term. She tested positive for cocaine and its metabolites on September 13, 2010, and again on January 6, 2011. Mother tested positive for cocaine and marijuana on September 23, 2010. Mother tested positive for alcohol and amphetamines on March 3 and March 14, 2011, [sic] April 5 and April 7, 2011. Mother tested positive for alcohol on March 22 and 28, 2011, and again on April 20 and 26, 2011. Mother submitted to a positive screen for marijuana and alcohol on May 24, 2011. Mother submitted to a screen and tested positive for marijuana on October 18, 2011. . . .

4

15. Mother participated in a substance abuse assessment in November of 2010, but failed to complete the recommendations.

16. . . . Mother is not involved in any counseling program and did not take the parenting classes at the YWCA, as she does not think she needs it. Mother did not attend any of the court ordered domestic violence programs and services.

17. During the CHINS case, Father submitted to random drug screens and tested positive for cocaine and its metabolites on September 23, 2010, and January 6, 2011. He submitted to positive alcohol screens on March 22 and March 25, 2011. Father participated in a substance abuse evaluation in which he minimized his use, made inconsistent statements, blamed others for his use, and claims that he was introduced to cocaine when he lived in Indianapolis. He meets the diagnostic criteria for alcohol and cocaine dependence. Father was referred to and completed a drug treatment program. He was then to follow up with completing a twelve (12) step program but failed to submit verification of regular attendance. Father also failed to appear for scheduled drug and alcohol screens.

18. Father has not in the past, nor during the present CHINS case [sic] displayed a willingness to assume more parenting responsibilities given Mother's struggles. Father participated minimally in services during the CHINS case, even though the services being provided to him were in Spanish. Father works daily from 10:00 am to 10:00 pm except for Tuesdays. He has two (2) other children. . . .

19. While Father attended some case management sessions and many visits, he failed to assume any primary responsibility for the care of his children. Father works seventy to eighty (70-80) hours per week, leaving the [C]hildren in Mother's care. Father's extended family lives outside of the country and are not able to help support him in caring for the [C]hildren. Father's history of substance abuse and violence would also put the children at risk.

20. Father has a history of violence in his relationships. By his own report, he has been arrested numerous times for domestic violence in Indianapolis. Although he spent over a year in jail, he denies any violence and claims it was just false reports.

21. Parents have a history of violent arguments in the home, some of which required police intervention. Father and Mother failed to successfully complete couple's counseling. . . . Mother claimed that Father damaged property in their apartment and that during fights they would push each other. . . .

22. Mother and Father currently do not have valid driver's licenses. Mother's license is suspended due to failure to appear on two (2) occasions for driving while suspended, being involved in an accident while having no insurance, failing to provide proof of insurance for accident, and speeding. . . . Father has never obtained a driver's license. Father has a pending case in Superior

Court 6 for failing to file proof of insurance with the Bureau of Motor Vehicles. Father was also found guilty in July of 2010, for failing to provide proof of insurance to the Bureau of Motor Vehicles and driving without receiving a valid license.

23. Parents' visits were supervised during the case. Parenting education was provided during visits and said instructions were provided in both English and Spanish. . . . Parents no-called and/or no-showed visitations at least one (1) to two (2) times per month, sometimes more.

* * *

25. Furthermore, GH is a child with numerous special needs and parents [sic] do not have the ability to meet GH's special needs. GH cannot sleep at night, wakes up five to twelve (5-12) times a night, and requires extensive parental support around the clock. He also has digestive problems which require a special diet. GH cannot put himself to sleep. He was diagnosed at Riley Children's Hospital as having "shackles" which the doctor contributes to a number of causes including neglect, exposure to drugs, and malnutrition. GH requires a caregiver to spend extensive time calming and soothing him.

26. CASA believes the reasons that led to the removal of the [C]hildren have not been remedied and it is in the best interest of the [C]hildren for parental rights to be terminated. The [C]hildren will likely suffer harm if returned to the parents' care.

27. The Court further finds, as a matter of law, that the [C]hildren were removed from the parents' home under a dispositional order dated more than six (6) months prior to the filing of the Petitions to Terminate Parental Rights.

28. The Court finds, as a matter of law that reasonable, appropriate, [sic] necessary services have been offered to Mother, Father, and [the Children] over an extended period of time commencing with the initial filing of the CHINS petition in July of 2010, to date. . . .

29. The Court finds, as a matter of law, that after approximately sixteen (16) months of rendering services of various kinds with different providers to this family, that there is not any basis for any reasonable belief that the circumstances which resulted in the removal of the [C]hildren from parents' care [sic] or, the reasons for continued placement outside the home will be remedied. Mother and Father have demonstrated a continuing pattern of behavior, non-compliance and failure to participate consistently in services, and an over-riding failure to place their children as a priority. Mother and Father do not indicate that they have a basic understanding or belief of the harm their children have suffered given their choices and instabilities in their own lives. . . .

30. The Court finds, as a matter of law, that the continuation of the parent-child relations poses a threat to the well [sic] being of the [C]hildren.

6

31. The Court finds, as a matter of law, that it would not be in the best interests of the [C]hildren to try to reunite this family.

32. The Court further finds that the DCS has an acceptable, reasonable, appropriate and satisfactory plan for the care and treatment of the [C]hildren. The [C]hildren can be adopted.

33. The Court finds it would be in the best interest of the [C]hildren for the rights of [Mother and Father] [sic] be terminated so that the [C]hildren can be placed for adoption at the earliest possible time.

Appellant's [sic] Appendix at 51-57. Mother and Father now appeal. Additional facts will be provided as necessary.

### Discussion and Decision

### I. Standard of Review

In reviewing termination of parental rights, we do not reweigh the evidence or judge the credibility of witnesses. Bester v. Lake Cnty. Off. of Family & Children, 839 N.E.2d 143, 147 (Ind. 2005). We consider only the evidence and reasonable inferences drawn therefrom favorable to the trial court's judgment. Id. In reviewing a termination of parental rights, when the trial court has entered findings of fact, as it did here, we apply a two-tiered standard of review. In re J.W., 779 N.E.2d 954, 959 (Ind. Ct. App. 2002), trans. denied. First, we examine whether the evidence supports the findings, and second we determine whether the findings support the judgment. Id. We will only set aside the findings and judgment if they are clearly erroneous. Id. Findings are clearly erroneous when no facts or inferences drawn therefrom support them. Id. A judgment is clearly erroneous when reviewing the record leaves us with a firm conviction that a mistake has been made. Id. When such findings are entered by the trial court sua sponte, the specific findings control

7

only as to the issues they cover, and a general judgment standard applies to any issue upon which the court has not specifically found. Id. (citation omitted).

## II. The Trial Court's Order

Indiana Code section 31-35-2-4 provides the requirements for a petition to terminate a parent-child relationship, including:

> (b) The petition must meet the following requirements:
> * * *
> (2) The petition must allege:
>   (A) that one (1) of the following is true:
>       (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.
>       (ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.
>       (iii) The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;
>   (B) that one (1) of the following is true:
>       (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>       (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>       (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>   (C) that termination is in the best interests of the child; and
>   (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2).

8

Mother and Father challenge the trial court's findings that the conditions leading to the Children's removal will not be remedied, that they pose a threat to the well-being of the Children, and that termination is in the best interests of the Children. Before addressing these specific challenges, we note the trial court did not err in finding the other requirements of Indiana Code section 31-35-2-4(b)(2) satisfied. The Children were removed from Mother and Father under a dispositional decree on August 20, 2010, and DCS's petition for termination of parental rights was filed on May 26, 2011, more than eight months after the Children were removed from their parents' care. In addition, a satisfactory plan for the Children's care and treatment was proposed by DCS. DCS proposed that the Children would be adopted.

Moving on to Mother and Father's specific challenges to the trial court's judgment, the reasons for the Children's removal were allegations of domestic violence, Mother's mental health issues, and Mother and Father creating an unsafe environment. Mother and Father argue their participation in numerous DCS services indicate the problems leading to removal were being addressed, the uncontroverted evidence shows they had strong and affectionate bonds with the Children, and "the family home had been made safe for the [C]hildren with dangerous objects kept out of reach, covers for wall outlets, and appropriate locking mechanisms to keep curious children out of cabinets or drawers they should [sic] access." Brief of Appellant [sic] at 20. Even if it is true Mother and Father attended the majority of services offered by DCS, it is not contested Mother failed to successfully complete mental health treatment and at times failed to take her medication as prescribed.

9

Mother also failed to attend any court-ordered domestic violence programs, and Mother and Father failed to successfully complete couple's counseling. Finally, both Mother and Father have repeatedly tested positive for marijuana, cocaine, and alcohol use, and they have failed to successfully complete drug rehabilitation programs.

These findings sufficiently support the trial court's conclusion that the reasons leading to the Children's removal will not be remedied. Mother and Father did not remedy their domestic violence and drug abuse problems, and even if the physical structure of their home was made safer, their drug use and Mother's mental health issues create an unsafe environment for the Children. To the extent Mother and Father argue the trial court should have been persuaded by their strong bonds and loving relationships with the Children, this is a request for us to reweigh the evidence on appeal, which we decline to do.

As to the trial court's conclusion that continuing Mother's and Father's relationships with the Children will pose a threat to the Children's well-being, we first point out that under Indiana Code section 31-35-2-4(b)(2)(B), only one of the three facts need be established as true. Thus, because the trial court did not err in concluding that there is a reasonable probability the conditions leading to the Children's removal from Mother and Father will not be remedied, it is not necessary to also establish that there is a reasonable probability the continuation of the parent-child relationships poses a threat to the well-being of the Children. Nevertheless, the trial court did not err in making this conclusion. The Children were initially removed from their parents' care to protect their well-being. The relationship of Mother and Father occasionally led to physical altercations, Mother has damaging and

10

debilitating mental health issues, and both Mother and Father routinely use cocaine and marijuana. Each of these three facts are threats to the well-being of the Children. The facts that Mother and Father shared strong and loving bonds with the Children does not eradicate these threats.

Last, Mother and Father contest whether termination of their parental relationships is in the best interests of the Children. Once again, based upon Mother's and Father's physical altercations, their history of drug abuse and apparent drug dependence, Mother's mental health issues, and their inability to successfully remedy these problems, we cannot say the trial court erred in concluding the termination of their parental relationships is in the best interests of the Children.

## Conclusion

The trial court's findings and judgment are not clearly erroneous, and thus it did not err in terminating the parental relationships of Mother and Father to the Children. We therefore affirm.

Affirmed.

BAKER, J., and BRADFORD, J., concur.

11